IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

HEJRATULLAH SAFI,                       )
                                        )
         Petitioner,                    )
                                        )
v.                                      )          1:26-cv-00728 (RDA/IDD)
                                        )
MARKWAYNE MULLIN, *et al.*,             )
                                        )
         Respondents.                   )
                                        )

## ORDER

On March 18, 2026, Petitioner Hejratullah Safi ("Petitioner") filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241 alleging that he is being unlawfully detained at the Caroline Detention Center.  Respondents filed their Opposition on March 30, 2026. Dkt. 7.  For the reasons set forth below, the Petition is DENIED.

## I.  BACKGROUND

Petitioner is a 30-year-old native and citizen of Afghanistan.  Dkt. 7-1 ¶ 5.  Petitioner entered the United States on August 28, 2021, as part of Operation Allies Refuge.[1]  *Id.* ¶ 6.  On August 29, 2021, he was issued a Form I-94, Arrival/Departure Record, granting him humanitarian parole until August 28, 2023.  *Id.* ¶ 7.

On June 5, 2022, Petitioner filed an Application for Asylum and Withholding of Removal with U.S. Citizenship and Immigration Services ("USCIS").  *Id.* ¶ 8.

On August 9, 2023, USCIS extended Petitioner's parole until August 28, 2025.  *Id.* ¶ 9.

On July 10, 2025, agents from Immigration and Customs Enforcement ("ICE") and the Federal Bureau of Investigation ("FBI") conducted a targeted arrest of Petitioner based on "an

---

[1] This operation appears to have also been referred to as Operation Allies Welcome.

ongoing national security investigation." *Id.* ¶ 10. Petitioner was taken into civil immigration custody that same day. *Id.* That same day, Petitioner was also issued a Notice to Appear ("NTA"), charging him with removability under 8 U.S.C. § 1182(a)(7)(A)(i)(I) and placing him into removal proceedings. *Id.* ¶ 11.

On July 29, 2025, Petitioner appeared before an Immigration Judge, admitted to the charges contained within the NTA, and conceded removability under 8 U.S.C. § 1182(a)(7)(A)(i)(I). *Id.* ¶12. That same day, Petitioner filed his I-589, Application for Asylum and Withholding of Removal. *Id.* ¶ 14.

On August 7, 2025, USCIS issued a Notice of Re-Parole Termination and Intent to Revoke EAD pursuant to 8 U.S.C. § 212.5(e)(2)(i). *Id.* ¶ 13.

On October 16, 2025, Petitioner had a hearing in the Immigration Court on his application for asylum. *Id.* ¶ 15. On October 31, 2025, a second hearing was held. *Id.* ¶ 16.

On February 20, 2026,[2] an Immigration Judge found Petitioner ineligible for asylum and withholding of removal, because he was a "danger to the security of the United States." *Id.* ¶ 17. The Immigration Judge further ordered Petitioner removed to Afghanistan. *Id.* Petitioner appealed, and his appeal remains pending. *Id.* ¶ 18.

On March 18, 2026, Petitioner filed the pending Petition. Dkt. 1. Petitioner challenges: (i) the revocation of his parole; (ii) his detention without bond pursuant to 8 U.S.C. § 1226(a); and (iii) the length of his detention. *Id.*

On March 30, 2026, Respondents filed their Opposition. Dkt. 7.

On April 13, 2026, Petitioner filed his Reply. Dkt. 10..

---

[2] The Declaration refers to this decision being issued on February 20, 2025. The Court assumes that this was a typographical error and that the Declaration was intended to refer to 2026.

2

Now that this matter has been fully briefed and is ripe for disposition, the Court dispenses with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J).

## II.  LEGAL STANDARD

"A federal court may grant habeas relief only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States.'" *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (internal citations omitted). After receiving the petition and any response thereto, "[t]he court shall summarily hear and determine the facts and dispose of the matter as law and justice require." 28 U.S.C. § 2243. "[T]he heart of habeas corpus," the Supreme Court has noted, is to allow a detainee to "challeng[e] the fact or duration of his physical confinement," and to "seek[] immediate release or a speedier release from that confinement." *Preiswer v. Rodriguez*, 411 U.S. 475, 498 (1973).

## III.  DISCUSSION

Before addressing the merits of the Petition, the Court must first address Respondents' arguments regarding jurisdiction. Although Respondents do not assert a lack of jurisdiction in the body of their Opposition and instead raise it only in a footnote, the Court has an obligation to assure itself of its ability to resolve this case. Respondents' jurisdictional argument is that the Court lacks jurisdiction to review Respondents' *decision to revoke* Petitioner's parole. Dkt. 7 at 2 n.1. The Petition, however, does not challenge the *decision to revoke* parole; rather, the Petition challenges the *manner* in which Respondents revoked parole. Dkt. 1. As this Court has previously noted, 8 U.S.C. § 1252(a)(2)(B)(ii) "precludes judicial review only where DHS's authority is committed to the agency's discretion by statute." *Pineda-Berrios v. Lyons*, 2026 WL 384159, at *4 (E.D. Va. Feb. 11, 2026). The Department of Homeland Security ("DHS") certainly has some

3

discretion to revoke parole, but that discretion is limited by Section 1182(d)(5)(A) and its implementing regulations. *Id.; see also Said v. Noem*, 2025 WL 3657217, at *4 (W.D.N.C. Dec. 17, 2025) ("As a threshold matter, this Court has jurisdiction to consider Petitioner's habeas challenge to his detention whether his parole was revoked or automatically terminated."); *L.M v. Noem*, 2026 WL 103231, at *8-9 (D. Nev. Jan. 14. 2026) (holding that "the question of whether parole is properly revoked pursuant to statutory and regulatory requirements, i.e. whether '[t]he revocation was lawfully authorized' is a predicate determination before a court can properly conclude that it lacks jurisdiction to review the revocation"). In any event, even where courts are stripped of jurisdiction over substantive decisions, courts still have jurisdiction to evaluate whether DHS complied with its own procedures and regulations. *Islam v. USCIS*, 2025 WL 1554777, at *3 n.2 (4th Cir. June 2, 2025); *cf Ortez v. USCIS*, 2026 WL 616491, at *2 (4th Cir. Mar. 5, 2026) (emphasizing that stripping courts of jurisdiction over discretionary decisions does not preclude all challenges to agency action). Accordingly, this Court has jurisdiction over the matters raised in the Petition.

### A.    Statutory Basis for Parole/Detention

Count 3 of the Petition challenges the basis for Petitioner's detention, which also implicates the basis for Petitioner's parole. Accordingly, the Court addresses this question first.

Because the parties do not agree as to the basis of Petitioner's status, the Court will work backwards from the facts as to which the parties do agree. As the Petition alleges (and Respondents agree), Petitioner was provided parole subject to the provisions of 8 C.F.R. § 212.5. Dkt. 1 ¶ 3. By its terms, Section 212.5 addresses the parole of aliens pursuant to "section 212(d)(5)(A) of the Act." 8 C.F.R. § 212.5(a). Section 212(d)(5)(A), codified at 8 U.S.C. § 1182(d)(5)(A), provides that the Secretary of Homeland Security may "in his discretion parole into the United States

4

temporarily under such conditions as he may prescribe only on a case-by-case basis" and that such "parole of such alien shall not be regarded as an admission of the alien." 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 1.2 ("An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked."). Thus, by statute and regulation, parole does not convert the status of an alien. The Supreme Court has also been clear that parole does not convert the status of an alien. *See DHS v. Thuraissigiam*, 591 U.S. 103, 139 (2020) ("[A]liens who arrive at ports of entry – even those paroled elsewhere in the country for years pending removal – are treated for due process purposes as if stopped at the border.") (internal quotation marks and citations omitted); *Mercado v. Lyons*, No. 1:26-cv-217 (RDA/LRV), Dkt. 15, Order entered March 11, 2026 (E.D. Va.) ("Because Petitioner was stopped at the border and subsequently paroled, he is not subject to the provisions of 8 U.S.C. § 1226 and not entitled to bond."); *Pineda-Berrios*, 2026 WL 384159, at *4 ("Put differently, parole under § 1182(d)(5)(A) employs a legal fiction whereby noncitizens are physically permitted to enter the country but are nonetheless treated, for legal purposes, as if stopped at the border.").[3]

Any "alien present in the United States who has not been admitted or who arrives in the

---

[3] Petitioner's citation to contrary district court decisions are not persuasive. Petitioner relies on *Qasemi v. Francis*, 2025 WL 3654098 (S.D.N.Y. Dec. 17, 2025), but that decision does not address the holding from *Thuraissigiam* that parolees are treated as if stopped at the border. Indeed, the *Qasemi* Court reaches the opposite conclusion of the Supreme Court and finds that an alien is not an arriving alien when he "has already arrived, was paroled, entered, and has now been present in the United States for over a year." *Qasemi*, 2025 WL 3654098, at *4. Although a district judge in this District has held an individual who was paroled into the country should be viewed as detained under Section 1226, that decision is not consistent with and does not address *Thuraissigiam*. *See Molina Lopez v. Lyons*, 2025 WL 3275493, at *2 (E.D. Va. Nov. 25, 2025). That decision is also not consistent with later decisions from that same district judge, *see Portillo-Argueta v. Simon*, 2026 WL 184194, at *4 (E.D. Va. Jan. 23, 2026) (recognizing that humanitarian parole is associated with detention under Section 1225(b)), or with other decisions from the District which recognize the "legal fiction" of parole, *Pineda-Berrios*, 2026 WL 384159, at *4. Accordingly, Petitioner's reliance on those cases is not persuasive.

United States (whether or not at a designated port of arrival . . . ) shall be deemed . . . an applicant for admission." 8 U.S.C. § 1225(a)(1); *see also* 8 C.F.R. § 235.1(f). An "arriving alien" includes an "applicant for admission [who is] coming or attempting to come into the United States at a port-of-entry[.]" 8 C.F.R. §§ 1.2, 1001.1(q). Section 1225(b)(2) encompasses all applicants for admission "seeking admission [and] [who are] not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2). Under Section 1225(b)(2), such applicants for admission "shall be detained." *Id.* Here, Petitioner arrived a port of entry – Dulles International Airport – and was paroled. Dkt. 7-1 ¶ 6. Petitioner identifies no statutory basis for Petitioner's admission to the United States. Moreover, "urgent humanitarian parole" (as was necessary for certain Afghani aliens) is specifically contemplated as an exception to detention under 8 U.S.C. § 1225(b). *See Jennings v. Rodriguez*, 583 U.S. 281, 300 (2018) (describing parole for "urgent humanitarian reasons or significant public benefit" as an exception to detention under Section 1225(b)(1) and (b)(2)). Indeed, Operation Allies Welcome was specifically described as "humanitarian parole." *See* Operations Allies Welcome, *available at* https://www.dhs.gov/archive/operation-allies-welcome (last visited May 11, 2026). Given Petitioner's parole status following arrival at a port of entry and Petitioner's failure to offer any basis from which the Court could determine that he was "clearly and beyond a doubt entitled to be admitted," 8 U.S.C. § 1225(b)(2), the Court finds that Petitioner was subject to detention under Section 1225 and was paroled for humanitarian reasons. Thus, if Petitioner's parole was properly revoked, he reverts to his original status under Section 1225 and is subject to mandatory detention and does not fall under the purview of Section 1226(a).[4] Accordingly, Count 3 will be denied.

---

[4] As this Court has frequently held, Section 1226(a) is the "default rule," which governs "aliens already in the country" who are subject to removal proceedings. *Jennings*, 583 U.S. at 288–89.

B.    Revocation of Parole

Having determined that Petitioner was paroled pursuant to an exception to Section 1225(b), the Court must now address whether Petitioner's parole was properly revoked, which is challenged in Counts 1, 2, and 4 of the Petition. On July 10, 2025, the same day as his arrest, ICE provided Petitioner with an NTA. Dkt. 7-1 ¶ 11. The applicable regulations which govern Petitioner's parole, and on which Petitioner relies, provides that, "[w]hen a charging document is served on the alien, the charging document will constitute written notice of termination of parole, unless otherwise specified." 8 C.F.R. § 212.5(e)(2). Courts recognized that a charging document includes "a Notice to Appear, a Notice of Referral to Immigration Judge, and a Notice of Intention to Rescind and Request for Hearing by Alien." *N.Y.V.D. v. Santacruz*, 2025 WL 3786964, at *4-5 (C.D. Cal. Dec. 23, 2025). Thus, Courts have held: "By serving Petitioner with a Notice to Appear . . . , Petitioner was given the written notice due to him under the regulation." *S.M.H. v. McGregor*, 2026 WL 1004572, at *3 (D. Ariz. Apr. 14, 2026). The NTA here was also properly signed by a "J 7394 Killian – SDDO." Dkt. 1-5. An SDDO is a "Supervisory Detention and Deportation Officer" and is one of the individuals authorized to issue a NTA. 8 C.F.R. § 239.1(a)(36) (providing that a "Supervisory detention and deportation officers" "may issue a notice to appear"). Because the NTA was properly issued and because a NTA is sufficient to constitute notice of revocation of parole, Petitioner's parole was properly revoked on July 10, 2025.

To the extent that Petitioner argues that the NTA was required to separately explain the bases for revoking parole or was required to also be authorized by a person designated to revoke parole pursuant to Section 212.5(a) (rather than a person designated to issue the NTA), Petitioner's arguments fail to persuade as they attempt to graft an additional requirement onto the regulations

7

that is not required by the plain language. The regulation provides that a "charging document will constitute written notice of termination of parole, unless otherwise specified." 8 C.F.R. § 212.5(e)(2). Thus, a "charging document" alone is sufficient. This is consistent with the Bureau of Immigration Appeals years-long interpretation of the regulation. *In re Matter of Arambula-Bravo*, 28 I & N. Dec. 388 (2021) ("A Notice to Appear . . . is sufficient to terminate a noncitizen's grant of parole under 8 C.F.R. § 212.5(e)(2)(i)."). Moreover, where the charging document is sufficient, it follows that a decision by a person authorized to issue that charging document is also sufficient and that Respondents are not required to have the NTA issued by someone with authority under *both* Section 239.1(a) and Section 212.5(a). Accordingly, as other courts have recognized, "Petitioner's parole was effectively revoked on written notice when []he was served with the NTA on the day []he was arrested." *Quintero v. Francis*, 2026 WL 265921, at *6 (S.D.N.Y. Feb. 2, 2026) (further holding that "once parole is effectively revoked, Petitioner was 'restored to the status that . . . []he had at the time of parole' – *i.e.*, an applicant for admission subject to mandatory detention" (citation omitted)).[5, 6] Accordingly, Petitioner has failed to carry his burden in this regard, and his Petition will be denied with respect to these counts.

---

[5] That Respondents subsequently issued a Notice of Re-Parole Termination and Intent to Revoke EAD on August 7, 2025 – *after the NTA* – was not necessary to properly accomplish the revocation of parole because that had already been accomplished by the NTA. Dkt. 1-1.

[6] Additionally, the issuance of the NTA sufficiently distinguishes this case from the Court's prior holding in *Mercado*, where the Petitioner received no written notice. Here, Petitioner received a notice contemplated by the applicable regulations. 8 C.F.R. § 212.5(e)(i). Moreover, to the extent that Petitioner suggests that a pre-deprivation or pre-detention hearing is necessary, such a hearing is not required by statute, by regulation, or by the Constitution; indeed, such protections are not even provided in criminal proceedings where there is a presumption of innocence.

## C.    Prolonged Detention

The final claim that Petitioner raises is a challenge to his detention under the Fifth Amendment. Dkt. 1 at 25. Petitioner was arrested and detained on July 10, 2025, and has been detained since. *Id.* ¶ 93. Thus, Petitioner has been detained for approximately ten months.

The Fifth Amendment's Due Process Clause provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings," *Reno v. Flores*, 507 U.S. 292, 306 (1993), and "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The Supreme Court nevertheless has recognized that "[d]etention during deportation proceedings is a constitutionally permissible part of [the deportation] process." *Demore v. Kim*, 538 U.S. 510, 531 (2003); *see also Carlson v. Landon*, 342 U.S. 524, 538 (1952) (recognizing that "[d]etention is necessarily a part of this deportation procedure"). In *Zadvydas*, the Supreme Court read 8 U.S.C. § 1231 to presumptively authorize detention for six months following the issuance of a removal order. 533 U.S. at 700.

Although a bond hearing is not required by either statute or by the Constitution for those held pursuant to Section 1225(b), district judges in this District have recognized that a certain point the liberty interests of an alien and the risk of indefinite detention overcome the interest of Respondents in detaining that alien. *See, e.g., Leke v. Hott*, 521 F. Supp. 3d 597, 605 (E.D. Va. 2021) (finding that "the Fifth Amendment's Due Process Clause affords Petitioner, an arriving alien already detained for 24 months, the right to a prompt bond hearing before an Immigration Judge"). As former Justice Anthony Kennedy noted, after a certain period of detention, the detention becomes "unreasonable or unjustified" such that it "become[s] necessary then to inquire

9

whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." *Demore*, 538 U.S. at 532-33 (Kennedy, J., concurring). This Court has reached a similar conclusion with respect to detention pursuant to 8 U.S.C. § 1226(c). *See Mejia v. Bondi*, No. 1:26-cv-66, Dkt. 12, Order dated February 20, 2026 (E.D. Va.) (holding that alien held for twenty months was entitled to a bond hearing). The question thus becomes whether the length of detention has reached that point here. It has not.

Here, Petitioner has been held for tenth months. Importantly, Petitioner has already appeared before an Immigration Judge. Dkt. 7-1 ¶ 17; Dkt. 1-3. Although not a decision with respect to bond, the Immigration Judge issued a 10-page decision on the merits finding that Petitioner presents a "danger to the security of the United States." Dkt. 1-3 at 5. In that regard, the Immigration Judge heard testimony and reviewed evidence. *Id.* at 3. Petitioner correctly notes that the standard that was applied by the Immigration Judge in this regard is not the same as the standard that would be applied in a bond hearing, but Petitioner does not sufficiently explain why such a hearing is insufficient for purposes of due process in these circumstances, especially where it was based on significant evidence and testimony. Indeed, Petitioner does not adequately explain why the Immigration Judge's decision that Petitioner presents a danger to the security of the United States – which this Court cannot second-guess – would not be determinative in a subsequent bond hearing. Indeed, such national security concerns can form the basis for continued detention. *See, e.g.*, 8 U.S.C. § 1226a (providing that the Attorney General may detain an alien where the Attorney General has "reasonable grounds" to believe that the alien "endangers the national security of the United States"); 8 C.F.R. § 241.14(d) (permitting detention of aliens whose "release presents a significant threat to the national security"). Additionally, in *Zadvydas*, the Supreme Court recognized that "special arguments might be made for forms of preventative detention and for

10

heightened deference to the judgments of the political branches with respect to matters of national security." 533 U.S. at 696. Thus, the Court finds that Petitioner here has not met his burden of showing a due process violation based on prolonged detention without a bond hearing where he has appeared before an Immigration Judge and there has been a finding that he presents a danger to national security.

Moreover, although the ten-month period of detention is beyond the six-month period found presumptively reasonable in *Zadvydas*, it is of much lesser length than in other decisions in which district judges in this District have granted habeas relief in contexts outside the traditional *Zadvydas* framework. *See Leke*, 521 F. Supp. 3d at 605 (petitioner detained for 24 months); *Mbalivoto v. Holt*, 527 F. Supp. 3d 838, 850 (E.D. Va. 2020) (petitioner detained for 22 months); *cf. Cardona Tejada v. Crawford*, 2021 WL 2909587, at *4 (E.D. Va. May 19, 2021) (requiring a bond hearing for a petitioner detained under Section 1226(c) for 25 months); *Gutierrez v. Hott*, 475 F. Supp. 3d 492, 494-96, 499 (E.D. Va. 2020) (same, for detentions of 23 and 28 months). Additionally, the length of the detention in this case is due in part to Petitioner's pending appeal. *See Aslanturk v. Hott*, 459 F. Supp. 3d 681, 694 (E.D. Va. 2020) (declining to grant habeas relief to an alien detained for 15 months where his appeal of his removal was pending). Thus, at this time, Petitioner has not met his burden to establish a constitutional violation premised on his detention of ten months.[7]

---

[7] Indeed, the Fourth Circuit has held that, in the context of *Zadvydas*, even significantly longer periods of detention are permitted, where the length is due to proceedings that are "progressing in their ordinary course and will eventually come to a close." *Castaneda v. Perry*, 95 F. 4th 750, 756 (4th Cir. 2024) (finding that petitioner had failed to demonstrate that there his removal was not significantly likely to occur in the reasonably foreseeable future where proceedings had "spanned four years"). That is not to say that this Court would in all circumstances find that prolonged detention is constitutionally compliant where there are ongoing proceedings; however, where, as here, Petitioner has been detained for a significantly shorter

## IV.   CONCLUSION

Accordingly, for all of the reasons above, it is hereby ORDERED that the Petition (Dkt. 1)

is DENIED and the Clerk of the Court is DIRECTED to place this matter among the ended causes.

The Clerk is directed to send copies of this Order to all counsel of record.

It is SO ORDERED.

Alexandria, Virginia
May **20** , 2026

_____ /s/

Rossie ┌. └. ┘........ ┘
United States District Judge

---

period of time than those petitioners who obtained habeas relief on similar claims and Petitioner received a hearing before an Immigration Judge who determined that Petitioner represented a danger to the national security of the United States, Petitioner has failed to meet his burden to show that habeas relief is warranted in this case.